# Rose Sternberg Lyon *v.* Gustave Lyon.

*Husband and wife—Alienation of husband's affections.*

In an action by a wife against her brother-in-law to recover damages for the alienation of her husband's affections, declarations and statements of the husband made after he had abandoned his wife in consequence of the alleged acts of the defendant, are not admissible as part of the res gestæ.

*Attorney at law—Attorney and client—Confidential communication—Evidence.*

In an action to recover damages for the alienation of a husband's affections, an attorney at law may testify as to statements made to him by the husband, if there is no contradiction of the positive statement of the attorney that at the time the declarations were made to him, no professional or confidential relation existed between him and the husband.

*Husband and wife—Alienation of husband's affections—Province of court and jury.*

A wife may maintain an action against her brother-in-law to recover damages for the alienation of her husband's affections, and if the evidence for the wife, although contradicted, tends positively to show that the husband separated from plaintiff in consequence of the acts and the demand and request of the defendant, the case is for the jury.

Argued April 17, 1899. Appeal, No. 183, Jan. T., 1898, by defendant, from judgment of C. P. Centre Co., Jan. T., 1896, No. 165, on verdict for plaintiff, in case of Rose Sternberg Lyon *v.* Gustave Lyon. Before STERRETT, C. J., McCOLLUM, MITCHELL, DEAN and FELL, JJ. Reversed.

Trespass to recover damages for the alienation of a husband's affections. Before LOVE, P. J.

At the trial it appeared that on December 26, 1893, plaintiff married Moyer Lyon, a younger brother of the defendant. Gustave Lyon resided in Philadelphia, and his brother, Moyer, was the manager of a store in Bellefonte which was apparently owned by Gustave. The evidence for the plaintiff tended to show that as soon as Gustave heard of his brother's marriage he hastened to Bellefonte and by threats and intimidation compelled his brother to separate from plaintiff.

Defendant offered to prove by Col. W. F. Reeder that on December 29, 1893, Moyer Lyon came to him and voluntarily, and not in the relation of client and attorney, and stated to

him that he, Moyer, would never live with his wife, or words of similar import. That this occurred prior to defendant coming to Bellefonte. That subsequently, and prior to January 7, 1894, Moyer and defendant came to his office, when Moyer again repeated the same conversation relative to his wife. That by the advice of the witness, Gustave Lyon, the defendant was directed to go to see the plaintiff on Sunday, January 7, 1894, after the defendant had declined to do so, for the purpose of showing that separation of plaintiff from her husband was the voluntary act of her husband, uninfluenced by the act of defendant, and to rebut plaintiff's allegation that defendant called on plaintiff on January 7, for the purpose of forcing a separation.

Objections. Counsel for plaintiff objects to the offer by Col. W. F. Reeder for following reasons : (1) Mr. Reeder was counsel for Moyer Lyon, and had been theretofore, and was to the knowledge of the court, representing said Moyer Lyon as counsel in the proceedings for support; (2) that by the language in the offer itself, Mr. Reeder was being consulted as counsel, and now appears in present trial as one of counsel; (3) because incompetent, irrelevant, inadmissible and hearsay evidence.

The Court: December 1, 1897, objection sustained, offer excluded and bill sealed for defendant. [6]

W. F. Reeder on the stand :

" Q. State whether in this interview between you and Moyer Lyon on December 29, 1893, you were or were not counsel in the controversy between him and his wife? A. I was not; no controversy had arisen at that time. Q. Were you consulted by him in that conversation as counsel? A. I was not. Q. You have said you did not regard this conversation as confidential ; do you know whether it was regarded as confidential by Moyer Lyon and G. Lyon? A. G. Lyon was not present; and I do not know how either of them regarded it ; I never heard them express their opinion; I neither received a fee nor did I charge any, and was not consulted as counsel at that particular time by Moyer Lyon. Q. Then this conversation was not a professional conversation; simply as a friend? A. Simply as a casual conversation between us as friends."

In connection with the testimony by Col. W. F. Reeder, the defendant's counsel renew the written offer previously read.

CROSS-EXAMINATION.

" Q. You represent all of the Lyon & Company's business? A. That is the firm business at this time. Q. Moyer Lyon was a partner of that firm at that time? A. I do not know; he was connected with the management of the business. Q. He consulted you about it? A. Very frequently. Q. You represented Moyer Lyon and was consulted by him subsequently with reference to his rights? A. Yes; in our discussion of the case against him I was. Q. Did you not state to myself and Mr. Bower that you represented Moyer Lyon personally, and that Judge Furst represented Gust Lyon? A. I think I did in that proceeding. Q. Are you in the habit of making charges for every conversation you have with a client in regard to a case? A. No, sir; if I did I would be kept busy making charges; I usually charge when I have any professional business with a man. Q. What other lawyer represented Moyer Lyon? A. W. C. Heinle represented him in the case where he was prosecuted in adultery; it was in the spring of 1895; the same spring the desertion case was going on. Q. Were you with Mr. Heinle in that? A. No, sir; I retired before that. Q. After this conversation? A. Yes, sir. Q. You were counsel in this case? A. For Gustave Lyon? Yes, sir."

The court: We sustain the objection and exclude the offer and seal a bill for the defendant. [7]

Mrs. Pauline Lichten, a sister of Moyer Lyon, on the stand:

" Q. When you first met Moyer Lyon, what declarations, if any, were made by him to you as to his marriage and living with his wife or the separation?"

Counsel for the plaintiff object to the question because it is after the departure of the defendant and the plaintiff's husband from Bellefonte, and because it is beyond the limit fixed by the court in admitting the defendant's offer of the testimony in this particular point in the case; and because it is incompetent, inadmissible and irrelevant.

The Court: Declarations made ten days or two weeks after the preliminary separation are not evidence. The objection is sustained and a bill sealed for the defendant. [8]

" Q. What, if anything, did you hear Gust Lyon say to Moyer Lyon with reference to his returning and living with his wife?"

The counsel for the plaintiff renew their objection for the reasons already stated.

The Court: The testimony is excluded and a bill sealed for the defendant. [9]

" Q. State whether or not during that period that your brother Moyer Lyon was at your house, your brother Gust attempted to restrain or control his actions in any way."

Counsel for the plaintiff object to the question for the following reasons : First, because it is subsequent to the time fixed for the separation between the plaintiff and her husband. Second, because the offer is not relevant to this issue. Third, because it is generally incompetent, irrelevant and inadmissible.

The Court: The objection is sustained, the evidence excluded and an exception noted for the defendant. [10]

Gustave Lyon on the stand :

" Q. Were there any other efforts made by Moyer that you know of to become reconciled to his wife ; if so, when and where ? A. Yes, sir; he told me ; I was not present. Q. He declared to you at several times ? A. Yes, sir."

The plaintiff's counsel object and ask that the foregoing statement be stricken out.

The Court : It is not evidence.

The counsel for the defendant, the defendant being on the stand, propose to ask him whether or not efforts were made by the husband to effect a reconciliation with his wife to his knowledge, and whether the husband at any time declared to him that he was making such attempts during the period he was in Philadelphia.

The counsel for the plaintiff object to the offer because it is hearsay evidence and not part of the res gestæ ; and it is irrelevant, incompetent and inadmissible.

The Court: The objections are sustained and an exception noted for the defendant. [11]

Emil Joseph on the stand.

The counsel for the plaintiff propose to prove by the witness on the stand and other witnesses, statements to them of Moyer Lyon between the time of the marriage and the day he left Bellefonte, a few days after the marriage, for the purpose of showing the state of his feelings towards his wife, and also his apprehension of the influence of the defendant, such evidence under the rulings of the court being admissible as evi-

dence in chief, and also in the nature of rebuttal or contradiction.

The defendant's counsel object to the offer for the following reasons: First, because the evidence is not rebuttal. Second, that if evidence at all, it should have been offered in chief. Third, it is incompetent to prove declarations of Moyer Lyon to outsiders and strangers on behalf of the plaintiff, Moyer Lyon being a competent witness for the plaintiff, and being present in court. Fifth, that any declarations of Moyer Lyon to strangers not in the presence of defendant cannot be given in evidence to affect him. Sixth, because it is irrelevant.

The Court: When the plaintiff first offered the testimony in chief, objection was made to the testimony of the witness as to the declarations of the plaintiff's husband, and upon motion it was stricken out. We permitted the defendant to prove the declarations of the husband as evidence of his intent to separate from his wife, and as evidence that the separation was voluntary on his part. It is perfectly competent for the plaintiff also to show his declarations, if he made declarations of a different character showing a different intent at or about the same time as part of the same transaction. We therefore overrule the objection, admit the evidence, and seal a bill for the defendant.] [12]

The court charged in part as follows:

[The testimony of the plaintiff further shows that while her husband did not sleep with her any more, or stay with her at night, except on the night of December 29, 1893, on January 7, 1894, the defendant had an interview with her and her mother, and her testimony is that he alleged or said to them that Moyer should not live with her; that he would have them separated, and that he made a proposition that she should apply for a divorce, and throw the odium upon Moyer. This is denied by the defendant. He states that he went there and communicated to her the facts that Moyer would not live with her, but he denies that he said that he should not live with her, or that he would separate them. Now, that is the vital evidence on the part of the plaintiff. Without that testimony we would say to you very frankly that there was nothing here to warrant a verdict against the defendant; but with that, under the law and the other testimony, we feel that it is a question for your con-

sideration. The testimony of Mr. Lewin and Mr. Joseph, called on behalf of the plaintiff, further shows that this defendant, when he arrived in this town on the morning of December 30, 1893, expressed dissatisfaction with this marriage. You will remember the testimony on that point.] [13]

[Then on January 9, Moyer Lyon went to Philadelphia, and it is claimed he went at the instance of this defendant, in order to secure a permanent separation from the plaintiff. The defendant claims he went because of his physical condition; that he was in ill health, and that he went for treatment. You are to determine under the evidence, which of these claims is true. If he went away for the purpose of receiving medical aid, then that would countervail the inference that he went at the instance of this defendant.] [14]

[If you find that his affections were not alienated from any cause through the acts of this defendant, then you need not go any further with your investigation. It will then be your duty to render a verdict for the defendant. You are to give proper weight to the testimony of witnesses who are uncontradicted in material points. Of course, where a witness is materially contradicted, it is a question for you to reconcile the testimony or determine what the truth is from the evidence in the case. If you find that the statement made by the plaintiff as to what happened at the time of the interview between her and the defendant is true, and that he separated this husband from his wife, alienated his affections, then for whatever damage she has sustained, she would have a remedy.] [15]

Verdict for plaintiff for $5,375. Judgment was entered for $4,000. Plaintiff appealed.

*Errors assigned* among others were (6–12) rulings on evidence, quoting the bill of exceptions; (13–15) above instructions, quoting them.

*A. O. Furst,* with him *James Scarlet,* for appellant.

*Ellis L. Orvis,* with him *Edward R. Chambers* and *Calvin M. Bower,* for appellee.

OPINION BY MR. JUSTICE McCOLLUM, October 8, 1900 :

This is a suit in which the plaintiff charges the defendant with having alienated the affections of her husband, and thus accomplished his abandonment of her. The answer of the defendant to the charge is that no word or act of his at any time, caused or contributed to the alienation complained of, and that on discovering the husband's purpose to abandon his wife he did all in his power to prevent the execution of it. The issue thus made required the jury to determine it upon the relevant and competent testimony in the case. If error appeared in the admission of irrelevant and incompetent testimony or in the rejection of evidence which was relevant and competent it was the province and duty of the court, on application of the injured party, to correct it.

In the case in hand the defendant alleges error in the admission and rejection of testimony, in the answers to the written points he submitted to the court, and in the excerpts from the charge on which the thirteenth, fourteenth and fifteenth assignments are based. The first, third, fourth and fifth points submitted to the court by the defendant constitute the basis of the first, second, third and fourth assignments and amount to an assertion by him that there was no sufficient evidence to warrant the submission of the case to the jury. The defendant also alleges error in the affirmance by the court of the plaintiff's second point " as an abstract proposition of law."

The testimony introduced by the plaintiff to substantiate her claim against the defendant was relevant to the issue involved, and, if credited by the jury, entitled her to a verdict in accordance with her contention. It follows as a logical sequence that there was no error in the refusal of the court to affirm the defendant's points as stated. As to the plaintiff's second point which constitutes the basis of the fifth assignment it is sufficient to say that the answer to it harmonizes with the general charge relating to punitive damages. It may also be said in this connection that the reduction of the verdict in the " opinion and decree refusing a new trial " evinced a purpose on the part of the court to limit the verdict to compensatory damages.

The rulings complained of in the eighth, ninth, tenth and eleventh assignments may be considered together. They re-

lated to the rejection of offers to prove by Pauline Lichten that her brother Moyer had no affection for his wife, and to the rejection of an offer to prove by the defendant that Moyer endeavored "to become reconciled to his wife and resume marital relations." The rejected offers referred to alleged declarations and statements of Moyer to his brother and sister respecting his wife after his abandonment of her. It is clear therefore that the declarations and statements alleged to have been made were not admissible as a part of the res gestæ.

We discover no error in the rulings complained of in the twelfth assignment or in the excerpts from the charge which constitute the basis of the thirteenth, fourteenth and fifteenth assignments.

The sixth and seventh assignments relate to the exclusion of W. F. Reeder as a witness to testify to declarations and statements made by Moyer on the 29th of December, 1893, to the effect that he would never live with his wife thereafter. The alleged ground of the exclusion was that Reeder at the time the declarations or statements were made was the legal adviser of Moyer. The testimony, however, was not sufficient to support this contention. We therefore sustain the sixth and seventh assignments.

Judgment reversed and a venire facias de novo awarded.